# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRIMA FOFANA and FELIPE PANIANGUA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. No.: 4:22-cv-40148-MRG |
| CITY OF WORCESTER, THOMAS B. DUFFY, MICHAEL J. HANLON, SHAWN FRIGON, BRENDON A. TIVNAN, THOMAS J. BARNEY, JASON R. POWERS, CHRISTOPHER PANARELLO, TREVIS COLEMAN, STEPHEN MITCHELL, STEVEN SARGENT, and EDWARD AUGUSTUS, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM TO ORDER ON DEFENDANT CITY OF WORCESTER'S PARTIAL MOTION TO DISMISS, [ECF NO. 40]; DEFENDANTS HANLON, FRIGON, BARNEY, PANARELLO AND COLEMAN'S MOTION TO DISMISS, [ECF NO. 42]; AND DEFENDANTS DUFFY, TIVNAN, POWERS AND MITCHELL'S PARTIAL MOTION TO DISMISS, [ECF NO. 44]**

**GUZMAN, J.**

This is a civil rights action that arises out of a January 2020 traffic stop where Brima Fofana ("Fofana") and Felipe Paniagua ("Paniagua") (together, "Plaintiffs") allege that they were targeted and stopped by law enforcement based on their race, that Defendant Officers used unreasonable force to detain them, and Defendant Officers filed false police reports to justify the interaction. [See Am. Compl., ECF No. 35]. Based on their arrest and subsequent criminal matters, Plaintiffs bring various constitutional, and state-law claims and seek compensatory relief from Defendants. [Id. ¶¶ 254-309].

Plaintiffs bring this action against the City of Worcester ("the City") and multiple employees of the Worcester Police Department ("WPD") in their official and individual capacities:

Lt. Michael J. Hanlon ("Hanlon"), Sgt. Christopher A. Panarello ("Sgt. Panarello"), Chief of Police

Steven Sargent ("Chief Sargent"), City Manager Edward Augustus ("City Manager Augustus"),[1]

Thomas J. Barney ("Officer Barney"), Travis Coleman ("Officer Coleman"), and Stephen Mitchell

("Officer Mitchell") (collectively, the "Officer Defendants"). [Am. Compl.]. [2]

 This Memorandum provides the reasoning for the Court's prior ruling, [ECF No. 62], on

three separate motions to dismiss: (1) Defendant City of Worcester's partial motion to dismiss,

[ECF No. 40]; (2) Defendant Officers Barney, Coleman, Frigon, Hanlon, and Panarello's motion

to dismiss, [ECF No. 42], and (3) Defendant Officers Duffy, Frigon, Powers and Tivnan's, partial

motion to dismiss, [ECF No. 44]. For the reasons set forth below, the City's Motion to Dismiss is

**GRANTED** and the Officer Defendants' Motions to Dismiss are **GRANTED IN PART** and

**DENIED IN PART**.

---

[1] The Amended Complaint incorrectly names Edward Augustus as the Mayor of the City of Worcester. [Am. Compl., ¶ 27]. The Court takes judicial notice that Augustus previously served as the City Manager. See Neal McNamara, Ex-Worcester Manager Augustus Leaving Dean College Job, Patch (Apr. 4, 2023, 16:20 ET), https://patch.com/massachusetts/worcester/ex-worcester-manager-augustus-leaving-dean-college-job. This issue is later resolved by later filings referring to Augustus correctly as the City Manager. [See ECF No. 52 at 5].

[2] The terms "official capacity" and "individual capacity" have specific meaning in the context of litigation. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985). In contrast, "a suit against [a] state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). The Supreme Court has ruled that neither a state nor state officials acting in their official capacities are "persons" within the meaning of § 1983. See Will, 491 U.S. at 71 (1989); see also Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) ("It is settled beyond peradventure, however, that neither a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action."). The only exception to this rule is where a state official is sued in her or his official capacity for injunctive relief. See Will, 491 U.S. 71 n.10. ("Of course, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (quoting Kentucky v. Graham, 473 U.S., at 167 n.14)). The Court will delve further into this analysis below, see infra [Section III.D].

I.    **BACKGROUND**

The following relevant facts are taken primarily from the allegations in Plaintiffs'
Amended Complaint, [Am. Compl.], and are accepted as true for purposes of this motion. Ruivo
v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court
"must separate the complaint's factual allegations (which must be accepted as true) from its
conclusory legal allegations (which need not be credited)"). All plausible inferences are made in
Plaintiffs' favor. Id.

**A. Relevant Facts**

I.    The Stop

In the early evening of January 30, 2020, WPD Officer Duffy observed "an unidentified
Black male" standing outside 39-41 Irving Street, Worcester, MA making phone calls. [Am.
Compl. ¶ 32]. Shortly after, Plaintiff Fofana – with Plaintiff Paniagua in the front passenger seat—
drove into the parking lot in a Volkswagen Jetta (the "Jetta"). [Id. ¶¶ 33-34]. The unidentified
Black male entered the vehicle and remained for about a minute. [Id. ¶¶ 35-36]. The unidentified
male then exited the Plaintiffs' vehicle and looked down at his hand. [Id.]

When Fofana drove away from the lot, Officer Duffy followed the vehicle and radioed
members of the WPD's Gang and Vice Units for back up for a suspected drug deal. [Id. ¶¶ 36, 41,
44].  Officer Duffy requested assistance to pull over and investigate the Jetta. [Id.] Plaintiffs'
vehicle continued down the road without making any moving violations. [Id. ¶¶ 41-42]. When
Fofana stopped his vehicle at a red light, on the corner of Salisbury Street and Highland Street,
multiple unmarked police cars without blue lights activated, pulled close to the Jetta on the rear

and left sides.[3] [Id. ¶¶ 47-53]. Plaintiffs state that they feared that these vehicles intended to drive them off the road. [Id. ¶¶ 49, 52].

Soon after, multiple officers (now named Defendants) surrounded the vehicle in plain clothes and yelled at Plaintiffs to "get out of the f*cking car!" without identifying themselves as police officers. [Id. ¶¶ 53-56]. Officer Tivnan then smashed the driver's side window with his flashlight and Officers Tivnan, Mitchell, and Powers pulled Fofana from the stopped vehicle, by his neck, hair, and jacket. [Id. ¶¶ 57-59]. Upon removal, Fofana's foot came off the vehicle's brake, causing the vehicle to spring forward and hit a nearby pole. [Id. ¶ 59]. Paniagua was then pulled out of the vehicle from the passenger side by his neck and head and slammed to the ground. [Id. ¶ 60]. Plaintiffs did not resist arrest as Officers punched and kicked both Plaintiffs while they lay on the ground. [Id. ¶¶ 61-62]. Fofana asserts that Defendant Officer Tivnan later demanded to know how he was able to afford the jacket he was wearing, which was torn in the altercation. [Id. ¶¶ 68, 266].

Officers arrested Fofana and charged him with two counts of assault and battery with a dangerous weapon, class D possession with intent to distribute marijuana, unlicensed operation, negligent operation of a motor vehicle, and failure to stop for a police officer.[4] [Id. ¶ 69]. Paniagua

---

[3] The amended complaint describes the police vehicles in an unclear manner, with varying levels of specificity regarding how many vehicles were present at the scene, how many were marked as police vehicles, and how many had their blue lights activated. [See Am. Compl., ¶¶ 50, 64-65, 67, 114]. On one occasion, Plaintiffs allege that police cars blocked the intersection and completely blocked the Jetta. [Id. ¶ 64]. The amended complaint acknowledges that the exact number of officers and police cars are imprecise, explaining that video footage is unclear given that many of the vehicles were unmarked. [Id. ¶ 67]. However, it is clear that 10 people exited the vehicles and surrounded the Jetta. [Id.] The imprecise language is of no concern as it does not impact the merits of the issue.

[4] The failure to stop charge was later amended to failure to use care and caution in stopping. [Id. ¶ 73]. The Court may consider certain documents the authenticity of which are not disputed by the parties, official public records, documents central to Plaintiff's claim, and documents sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (collecting cases). The state court transcript, referenced throughout and attached to, the amended complaint, is central to the Plaintiffs' claims and is not in dispute by the parties, accordingly, the Court may review the filing at this stage of the litigation. [ECF No. 35-2].

was arrested and charged with class D possession of marijuana and resisting arrest. [Id. ¶ 70]. Plaintiffs assert that they did not resist arrest at any time. [Id. ¶ 62]. Plaintiffs allege that Defendant Officers filed false police reports to justify the arrest and use of force against Plaintiffs. [Id. ¶¶ 77, 85, 95, 98, 101, 103]. The initial police report from Officer Powers stated that,

> Once we exited and approached the Volkswagen, the operator began to pull off swerving at and striking other officers. The operator attempted to flee and struck a street light pole. PO Stephen Mithchell (sic.), Brendon Tivnan and I were able to get the operator out of the vehicle and place him in handcuffs and arrested. The operator was identified as Brima Fofana and transported to the station via the patrol wagon.

[Id. ¶ 98]. Upon questioning of the incident and several viewings of the video of the arrest, Sgt. Pageau had the Officers correct their report to the Department Bureau of Professional Standards ("BOPS") to more accurately reflect the order of events. [Id. ¶¶ 99-107]. While the amended complaint is not clear exactly what role each of the Defendants played during this interaction, an internal investigation by the City of Worcester states that officers involved in the incident are Defendants Duffy, Barney, Powers, Tivnan, Coleman, and Frigon. [ECF No. 35-1 at 2; see infra A.III].

II.    Motion to Suppress and Responsible Finding

On March 22, 2021, related to the criminal charges filed against Fofana and Paniagua, Judge D'Angelo granted a Motion to Suppress for the evidence found at the stop. [Am. Compl. ¶ 76]. Judge D'Angelo determined that there was no probable cause to stop Plaintiffs based merely on Officer Duffy's observation of the unidentified man looking at his hand. [ECF No. 35-2 at 44:6-10 (". . . I don't even think this one is close, frankly . . .. I don't even think there was even remotely close to enough evidence that there was reasonable suspicion to believe that that car was involved in drug activity"); 46:18-19 ("I have found that the stop was improper, and I have thrown out the evidence that flows from that illegal stop"); 48:15-17 (dismissing several counts)]. All criminal

charges against the Plaintiffs were subsequently dismissed on September 27, 2021. [Am. Compl. ¶ 72]. Thus, the only cause of action that survived these proceedings was the amended failure to use care and caution in stopping infraction.[5] [Id. ¶¶ 72-73]. Plaintiffs assert that Fofana ultimately agreed to a responsible finding on the civil infraction to have the actions dismissed against him. [Id. ¶ 74, 98-107; ECF No. 35-1 at 9-10].

III.    The BOPS Investigation and FOIA Request

After the motion to suppress was granted, Fofana filed a complaint with the Worcester Police Department BOPS alleging racial profiling. [Am. Compl. ¶¶ 80, 84]. On June 25, 2020, the BOPS commenced an internal affairs investigation led by Sgt. Pageau. [Id. ¶¶ 81, 131-32]. As part of the internal affairs investigation, all officers were permitted to answer questions regarding Plaintiffs' arrests in writing with the assistance of other officers, including their union representatives and direct supervisors. [Id. ¶¶ 149, 164-65]. On January 2, 2021, Chief of Police Steven Sargent cleared all officers of wrongdoing; Plaintiff Paniagua was never interviewed. [Id. ¶ 108]. The Officers were never disciplined for the force used during the arrest or the inaccurate information within their police reports. [Id. ¶¶ 148, 150, 160].

Counsel for Fofana filed a FOIA request for all police records pertaining to motor vehicle stops that resulted in a search, but did not amount to an arrest or citation, as well as race statistics from all motor vehicle stops that resulted in a search but did not amount to an arrest or citation, and finally, all records pertaining to pedestrian and motor vehicle stops of suspected drug buyers or suspected drug dealers by all specialty units within the WPD that resulted in a search but did not amount to an arrest. [Id. ¶ 86]. The City of Worcester responded to the FOIA request by stating

---

[5] Failure to use proper care in starting, stopping, turning or backing is a civil infraction proscribed by 720 CMR 9.06 (9) and, pursuant to 720 CMR 9.07(5), the penalty is a fine of $20.00. [ECF No. 43 at 11].

that the City was unable to provide such records as that information is not tracked and the request does not reference searchable fields. [Id. ¶ 87]. Counsel for Fofana then filed a FOIA request for all incidents and complaints involving 39-41 Irving Street. [Id. ¶ 92]. From this request, an incident history showed that there were no calls for drug distribution around 39-41 Irving Street between December 3, 2019, and January 28, 2020, which Plaintiffs claim is inconsistent with Officer Duffy's report to BOPS. [Id. ¶¶ 93-94].

### B. Procedural History

Plaintiffs Fofana and Paniagua filed their original complaint on December 12, 2022. [ECF No. 1]. On April 25, 2023, Defendants filed three motions to dismiss for failure to state a claim on behalf of (1) Barney, Coleman, Frigon, Hanlon, and Panarello; (2) Duffy, Mitchell, Powers, and Tivnan; and (3) Augustus, City of Worcester, and Sargent, respectively. [ECF Nos. 22, 24, 25]. On June 11, 2023, Plaintiffs filed their Opposition to the Motions to Dismiss. [ECF No. 31].

On August 17, 2023, Plaintiffs filed an Amended Complaint against all Defendants, which now serves as the operative complaint. [ECF No. 35]. In September 2023, Defendants City of Worcester, Defendants Barney, Coleman, Frigon, Hanlon, and Panarello, and Defendants Duffy, Mitchell, Powers, and Tivnan filed renewed Motions to Dismiss, and Defendants Augustus and Sargent filed an Answer. [ECF Nos. 40, 42, 44, 45]. The parties then filed an opposition and a reply related to the pending motions to dismiss. [ECF Nos. 52, 55]. A motion hearing was held before the Court on July 31, 2024. [ECF No. 61]. The Court then docketed its order **GRANTING** the City of Worcester's Motion to Dismiss and **GRANTING IN PART** and **DENYING IN PART** the Defendant Officers' Motions to Dismiss. [ECF No. 62].

## II.    <u>LEGAL STANDARDS</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556). When deciding a 12(b)(6) motion to dismiss, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." <u>Grajales v. P.R. Ports Auth.</u>, 682 F.3d 40, 44 (1st Cir. 2012) (citing <u>Nisselson v. Lernout</u>, 469 F.3d 143, 150 (1st Cir. 2006)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted). At the pleading stage, a plaintiff is not required to "plead facts sufficient to establish a prima facie case," but "those elements are part of the background against which a plausibility determination should be made." <u>Rodriguez-Reyes v. Molina-Rodriguez</u>, 711 F.3d 49, 54 (1st Cir. 2013).

## III.    <u>DISCUSSION</u>

Plaintiffs bring both federal and state claims in this action. Defendants have filed three separate motions to dismiss for this matter, but several counts are unopposed by Defendants. The Court will address the federal and state claims separately.[6] Counts I, II, and IV allege violations

---

[6] To the extent a state claim overlaps with a federal claim, the Court will analyze both under the federal claims section.

of constitutional rights under 42 U.S.C. § 1983 ("Section 1983"). Counts V-XI allege violations of state law. The Court will analyze each Count in turn.

### A.    **Stipulated Counts**

#### a.   *Count VIII: Malicious Destruction of Property*

Plaintiffs concede that Count VIII for malicious destruction of property should be dismissed because it is not a valid civil cause of action. [ECF No. 52 at 7]. Therefore, the Court will not analyze this count. Count VIII is **dismissed** against all Defendants.

### B.    **As to the City of Worcester**

The pleadings appear to advance all eleven counts against the City of Worcester. [Am. Compl. ¶¶ 254-308]. The City of Worcester moves this court to dismiss ten of the eleven claims against it, excluding the Count III *Monell* claim, arguing that Counts I, II, and IV-XI are precluded as a matter of law and cannot be maintained against a municipality. [ECF No. 41]. As outlined in the following, the City's Partial Motion to Dismiss is **GRANTED**.

#### a.   *Counts I, II, IV (Section 1983 Claims)*

Plaintiffs bring several claims under Section 1983 against the City of Worcester including, unreasonable search and seizure, equal protection, and civil conspiracy under the Fourth, Fifth, and Fourteenth Amendments. [Am. Compl. ¶¶ 254-70, 284-87(d)].

A city or other local government may be liable under Section 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 692 (1978)). However, under Section 1983, local governments are responsible only for "their own illegal acts" and may not be held "vicariously liable" for their employees' actions. Id. (citations omitted). Liability cannot be imposed through a

theory of vicarious liability premised "solely on the basis of the existence of an employer-employee relationship with a tortfeasor." Monell, 436 U.S. at 691-92. Therefore, plaintiffs who seek to impose liability against local governments must prove that the "'action pursuant to official municipal policy' caused their injury." Id. A city may be liable for constitutional violations under Section 1983 if the government body causes plaintiff's injury by either a municipal policy or a municipal custom. Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 305 (D. Mass. 2017).

To find a municipality liable, the court must find that: (1) the plaintiff's harm was caused by a constitutional violation, and (2) the city was responsible for the harm. Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005). Furthermore, a plaintiff suing a municipality under Section 1983 must allege that "*deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights. Board of the County Comm'rs v. Brown, 520 U.S. 397, 400 (1997) (quoting Monell, 436 U.S. at 694) (emphasis in original).

Counts I, II, and IV allege that the Defendants conducted an unlawful traffic stop using unreasonable force, improperly detained Plaintiffs based on their race, and conspired to commit constitutional injuries. [Am. Compl. ¶¶ 254-70, 284-87(d)]. Plaintiffs are advancing theories of direct liability against the individual Defendant Officers and vicarious liability against the City of Worcester. In essence, Plaintiffs' claims against the City assert either that the City is directly responsible for the actions of the officers or that the City is liable for employing alleged tortfeasors. Both theories of liability fail under Section 1983. The first theory fails because "the City is not directly responsible for the actions of its officers or supervisors." Mazza v. City of Boston, 753 F. Supp. 3d at 94 (citing Monell, 436 U.S. at 692 (holding that municipality is "not responsible for the . . . unlawful acts of its officers")). The second theory also fails because of Monell's clear

mandate that "a municipality cannot be held liable *solely* because it employs a tortfeasor." Monell, 436 U.S. at 691.

As noted in the Defendant's memorandum, [ECF No. 41 at 9], the proper method of naming a municipality in a civil rights claim, is through a *Monell* claim which Plaintiffs appropriately delineate in Count III.[7]  Plaintiffs argue their theory that customs and practices of the City and the WPD, led to the violation of their rights as citizens, namely that police officers are not required to maintain records of stops that do not amount to an arrest or citation; that the Worcester Police Officers are not mandated to report searches of individuals of color unless an arrest is made or citation is issued; and that the City of Worcester and its agents have permitted a culture within the police department to stop individuals of color without reasonable suspicion or probable cause. [See Am. Compl. ¶¶ 88-91, 178-197; ECF No. 52 at 1]. Plaintiffs argue that their injuries would not have occurred but for the historic lack of accountability for accusations of excessive force, which allowed the Officers to "conduct this action without any fear []" of punishment. [ECF No. 52 at 7]. Defendants have not challenged the *Monell* claim at this stage, and the Court will refrain from discussing the merits of Count III until it is properly argued before the Court.

Accordingly, Counts I, II, and IV fail to state a claim, and Defendant City of Worcester's Motion to Dismiss, [ECF No. 40], is **GRANTED** as to these counts.

---

[7] At oral argument, Defendants cited Plaintiffs' opposition brief, stating that Plaintiffs concede that they will not pursue a failure to train theory against the City. [ECF No. 61, Rough Transcript, 9:8-10 (on file with the Court); ECF No. 52 at 19 ("Under this claim the Plaintiffs concede that the complaint does fail to state any grounds for the failure to train but succeeds on the other factors to supervisor liability.")].  This statement was not opposed during the hearing; therefore, the Court will **dismiss** Count III in the limited extent that it alleges a failure to train theory of liability.

### b. _Counts V-VII, IX-X[8]_

Plaintiffs name the City directly as a defendant liable for various intentional tort claims, including, assault and battery (Count V), false arrest and imprisonment (Count VI), unreasonable force (Count VII), unreasonable search and seizure (Count IX), and civil conspiracy (Count X). Each of these torts requires some level of intent rather than mere negligence. See Mass. Gen. Laws ch. 258, §10(c). Defendants' argument in support of dismissal leans on the Massachusetts Tort Claims Act, demanding that the Court dismiss these claims outright. For the following reasons, the Court agrees.

The Massachusetts Tort Claims Act ("MTCA") creates "a cause of action against public employers for the negligent or wrongful acts or omissions of their employees acting within the scope of their employment." See Luthy v. Proulx, 464 F. Supp. 2d 69, 76 (D. Mass. 2006). Section 10(c) of The Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258 ("MCTA"), "preserves municipal immunity for 'any claim arising out of an intentional tort.'" See Mass. Gen. Laws ch. 258, § 10(c) (barring municipal and state liability for intentional torts, such as assault and battery, false arrest, and false imprisonment); see also Nelson v. Salem State College, 845 N.E. 2d 338, 348 (Mass. 2006) ("Intentional torts are expressly exempted from the Act, and therefore a public employer cannot be sued for its employee's intentionally tortious conduct." (citing Mass. Gen. Laws. Ch. 258 §10(c))).

Therefore, because a municipality enjoys governmental immunity for intentional torts under the MTCA, the following intentional torts of assault and battery (Count V), false arrest and

---

[8] Having previously dismissed Count VIII the Court will not repeat an analysis to that claim. The Court dismisses Count XI for separate reasons, _infra_ Section III.H.b.

imprisonment (Count VI), unreasonable force (Count VII), unreasonable search and seizure (Count IX), and civil conspiracy (Count X),[9] must be dismissed.

Upon review of the Plaintiffs' opposition brief, there is no argument presented that the dismissal of these claims would be improper, instead, Plaintiffs' opposition arguments focus exclusively on issues of custom, policy, or practices which are proper arguments under the *Monell* claim not at issue here. Therefore, the Court deems the Plaintiffs' arguments as to municipality liability under Counts V-VII and IX-X as waived. See Sigma-Aldrich Corp. v. Stonebrook, No. 23-cv-10140-DJC, 2025 WL 1927623, at *7 (D. Mass. July 12, 2025) (citing Uranga v. U.S. Citizenship & Immigr. Servs., 490 F. Supp. 3d 86, 109 (D.D.C. 2020) (explaining that "when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded"); Mahoney v. Found. Med., Inc., 342 F. Supp. 3d 206, 217 (D. Mass. 2018) (deeming a claim not addressed in an opposition to a motion to dismiss waived); Perkins v. City of Attleboro, 969 F.Supp.2d 158, 177 (D. Mass. 2013) (same); Mass. R. Civ. P. 7.1(b)(2) (providing that "[a] party opposing a motion shall file in the same (rather than a separate) document a memorandum of reasons, including citation of supporting authorities, why the motion should not be granted.")

Accordingly, Counts V-VII, IX-X fail to state a claim, and Defendant City of Worcester's Motion to Dismiss, [ECF No. 40], is **<u>GRANTED</u>** as to these counts.

---

[9] Federal courts in Massachusetts have previously found that although Mass. Gen. Laws ch. 258, § 10(c) "does not specifically enumerate conspiracy, [it] still contemplates such claims 'by the language of § 10(c) in that the essence of civil conspiracy claim is the intent to act in concert with another to the detriment of a third party.'" Wentworth Precious Metals, LLC v. City of Everett, No. 11-10909-DPW, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013) (quoting Leatham v. Donell, No. 954539B, 1996 WL 1251390, at *2 (Mass. Super. Ct. Aug. 9, 1996)). Thus, while not enumerated in § 10, civil conspiracy is an intentional tort, thereby barring Plaintiffs' claim against the City. See Rezendes-Walsh v. City of Boston, 6 Mass. L. Rep. 192 (1996) (holding that the list enumerated in MTCA §10(c) is illustrative, rather than exhaustive).

C.    <u>As to Defendant Hanlon</u>

Plaintiffs bring ten claims against Defendant Officer Hanlon. [Am. Compl.]. According to the amended complaint, Defendant Lt. Michael Hanlon was a police officer for the WPD at all relevant times to this action. [<u>Id.</u> ¶ 21]. Outside of the caption of the case, an identification as a party, [<u>Id.</u>], and the asserted claims, there is only one sentence in the amended complaint which references Lt. Hanlon,

> Chief Sargent's conclusions and his refusal to discipline . . . demonstrates knowledge that Sargent, Hanlon, Worcester Police and Augustus knew of the filing of inaccurate police reports but failed to discipline and, demonstrates deliberate indifference and the existence of a code of silence in the WPD along with a culture of racial profiling that is ignored.

[<u>Id.</u> ¶ 150].

Under Fed. R. Civ. P. 8(a)(2), a complaint need only include, "a short and plain statement of the claim showing that the pleader is entitled to relief." A well-pleaded complaint does not require detailed factual allegations, but "must contain sufficient factual matter, accepted as true, to state a plausible claim on its face." <u>Ashcroft</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 555).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully . . .. [W]here a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

<u>Id.</u> at 678 (citing <u>Twombly</u>, 550 U.S. at 555). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must at least "set forth minimal facts as to who did what to whom, when, where, and why. . . ." <u>Educadores Puertorriquenos en Accion v. Hernandez</u>, 367 F.3d 61, 68 (1st Cir. 2004).

There are no individualized references to Officer Hanlon within the amended complaint, or any of the relevant attachments, that meet the plausibility standard for a 12(b)(6) motion.

Defendants argue that the failure to allege particularized allegations should lead to the dismissal of Defendant Hanlon, as well as Officers Frigon, Barney, Panarello, and Coleman. [ECF No. 43 at 4-5]. However, Defendant Hanlon is discernable from the other Defendant Officers because the other Officers were present the night of the incident and were mentioned in the subsequent internal investigation by the City of Worcester.  [ECF No. 35-1 at 6, ("[Officer Duffy] also stated he spoke with officers present that night to include Gang Unit Officers Powers, Barney, Frigon, Coleman, Tivnan, and Vice Officers Sgt. Panarello, Mitchell and Gaffney."); ECF No. 35-1 at 2]. In contrast, there is no mention of Officer Hanlon outside of the fact that he is a supervisor to these officers. Those brief references fail to comply with Fed. R. Civ. P. 8(a)(2).

Therefore, all claims as to Defendant Hanlon must be **dismissed**.

### D.     **Official Capacity Claims for Monetary Damages are Barred by Eleventh Amendment Immunity and 42 U.S.C. § 1983.**

Plaintiffs' claims for monetary damages against state officials in their official capacity are barred under Eleventh Amendment Immunity and 42 U.S.C. § 1983. The Eleventh Amendment "has been construed to bar all suits against a state for damages in the federal courts, regardless of the citizenship of the plaintiff." Cline v. Burke, 682 F. Supp. 3d 125, 131 (D. Mass. 2023) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 15 (1890)); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Davidson v. Howe, 749 F.3d 21, 27 (1st Cir. 2014) (""[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment")(quoting Edelman v. Jordan, 415 U.S. 651, 663 (1974)).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't

of State Police, 491 U.S. 58, 71 (1989) (citations omitted). Further, Section 1983 does not abrogate the Commonwealth's sovereign immunity. See Quern v. Jordan, 440 U.S. 332, 341-42 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."). Because state officials acting in their official capacity are considered an extension of the state, the Officer Defendants in their official capacity are entitled to sovereign immunity and cannot constitute a "person" under Section 1983. See Will, 491 U.S. at 71. Accordingly, to the extent the amended complaint seeks monetary damages against any of the Defendant Officers who are state employees in their official capacity, such claims are barred under the Eleventh Amendment and 42 U.S.C. § 1983.

Plaintiffs do not specifically demarcate which claims against the Defendant Officers are brought in their official as opposed to individual capacities;[10] however, Plaintiffs exclusively seek damages rather than injunctive relief. Regardless of isolated references of the Defendants acting in their official capacity, this Court construes Plaintiffs' prayer for damages, versus injunctive relief, as claims against the Officers in their individual, rather than their official, capacities. The First Circuit has adopted a "course of proceedings" test, which examines the "substance of the pleadings and the course of proceedings" to determine whether a party intended to sue an individual in their personal capacity, official capacity, or both. Powell v. Alexander, 391 F.3d 1, 22-23 (1st Cir. 2004). "Factors relevant to this analysis include the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity." Id. at 22 (citing Moore v. City of Harriman, 272 F.3d 769, 772 n.1 (6th Cir. 2001)). Noting that the Plaintiffs are pursuing monetary

---

[10] While the amended complaint overall is not specific, Plaintiffs do state that they are suing Defendants in their official capacities on several occasions. [Am. Compl., ¶¶ 151, 275, 293].

and punitive damages in this case, the Court liberally construes the complaint to read the allegations as to *both* official and individual capacities. See Powell v. Alexander, 391 F.3d 1, 22-23 (1st Cir. 2004). Having dismissed the official capacity claims, Plaintiffs may only seek monetary damages against the remaining Defendants in their individual capacities.

All official-capacity claims pursuing monetary damages against the remaining defendants are hereby **DISMISSED** for lack of subject matter jurisdiction under Eleventh Amendment Sovereign Immunity and for failure to state a claim under 42 U.S.C. § 1983.

### E.    Qualified Immunity

Qualified immunity protects public officials in their individual capacity and may shield an officer from civil liability unless the officer violates clearly established law of which a reasonable officer would have known at the time of the offense. See Ortiz v. Jordan, 562 U.S. 180, 188 (2011); Gomez v. Toledo, 446 U.S. 635, 639 (1980). Because qualified immunity is an immunity from suit, an officer's claim of qualified immunity "ought to be resolved as soon as possible in [the] litigation." Norton v. Rodrigues, 955 F.3d 176, 183 (1st Cir. 2020). Qualified immunity is an affirmative defense and the burden of pleading it "rests with the defendant." Gomez, 446 U.S. at 640 (citing Fed. R. Civ. P. 8(c); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1271 (1969)). Defendants may raise a claim of qualified immunity at "three distinct stages of litigation," at the motion to dismiss stage, after discovery is conducted for summary judgment, and at trial. See Guzman-Rivera v. Rivera-Cruz, 98 F.3d 664, 667 (1st Cir. 1996). However, the affirmative defense, like any other, may be considered waived or forfeited if not pleaded in the answer or a subsequent pleading in reasonable time. Lawless v. Town of Freetown, 63 F.4th 61, 65 (1st Cir. 2023); Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]"). The First Circuit has held that it is improper for "defendants

to raise initially and exclusively by summary judgment motion a qualified immunity defense."
Lawless, 63 F.4th at 66 n.4.

Here, most Defendants did not raise the issue of qualified immunity in an answer, their
initial motion to dismiss, or their renewed motions to dismiss the amended complaint, *prior* to the
Court's consideration of the pending motions, [ECF No. 62]. The only mention of qualified
immunity in this case was in the answer by Edward Augustus and Steven Sargent for the amended
complaint, [ECF No. 45].[11] As the parties did not timely raise qualified immunity as a defense
prior to the consideration of the present motions to dismiss, the Court declines to subject the
present claims to a qualified immunity analysis. For now, the Plaintiffs may pursue their remaining
claims against Defendant Officers in their individual capacities and Defendants' affirmative
defense of qualified immunity can be considered at the next appropriate procedural phase.

**F.    Federal Claims as to Officer Defendants in Their Individual Capacities**

Section 1983 "is a vehicle through which individuals may sue certain persons for depriving
them of federally assured rights[.]" Gagliardi, 513 F.3d at 306. To succeed on a Section 1983
claim, a plaintiff must show that defendants acted under the color of state law, and that his or her
conduct deprived the plaintiff of rights secured by the Constitution or by federal law. Id. (citing
Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997)). As noted *supra* (Section III.B.),
vicarious liability is inapplicable to Section 1983 claims. See Welch v. City of Biddeford Police
Dep't, 12 F.4th 70, 75-76 (1st Cir. 2021) ("Officers are not liable under § 1983 for the actions of
other officers"). As such, "a plaintiff must plead that each Government-official defendant, through

---

[11] The Court notes that Defendants City of Worcester, Thomas Duffy, Shawn Frigon, Brendon
Tivnan, Thomas Barney, Jason Powers, Christopher Panarello, Trevis Coleman, and Stephen Mitchell filed
an answer after the Court's decision, asserting qualified immunity as an affirmative defense, in addition to
sixty other defenses. [ECF No. 67].

the official's own individual actions, has violated the Constitution." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009).

      *a.*   <u>*Count I: Unlawful Search and Seizure (42 U.S.C. § 1983); Count VI: False*</u>
              <u>*Arrest and Imprisonment*</u>

Plaintiffs Fofana and Paniangua bring claims for false arrest under both Section 1983 (Count I) and state law (Count VI).[12] Plaintiffs allege that Defendants lacked probable cause to make a traffic stop, and the subsequent detention and unwarranted search of Plaintiffs' automobile were unreasonable in violation of Plaintiffs' rights guaranteed by the Fourth Amendment of the United States. [Am. Compl. ¶¶ 254-59]; U.S. Const. Amend. IV.  Defendants assert that Plaintiffs are precluded from arguing that the stop of their vehicle was improper. [ECF No. 43 at 11].

The Fourth Amendment protects individuals from unreasonable seizures, including arrests made without probable cause. U.S. Const. amend. IV; <u>see</u> <u>Karamanoglu v. Town of Yarmouth</u>, 15 F.4th 82, 87 (1st Cir. 2021). A traffic stop "embodies a detention of the vehicle and its occupants" and therefore "constitutes a seizure within the purview of the Fourth Amendment." <u>United States v. Chhien</u>, 266 F.3d 1, 5 (1st Cir. 2001). It is well-established that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996).[13] To maintain a cause of action under Section 1983, a plaintiff must allege that they were being "depriv[ed] . . . of federally assured rights[.]" <u>Gagliardi</u>, 513 F.3d at 306. It is a "long settled principle" that the Fourth Amendment prohibits warrantless arrests not supported by probable cause. <u>Fraser v. Mass. Bay Transp. Auth.</u>, 544 F. Supp. 3d 148, 156-57 (D. Mass. 2021) (quoting <u>Prall v. City of Boston</u>, 985 F. Supp. 2d

---

[12] Defendants Duffy, Mitchell, Powers and Tivnan do not oppose Count VI in their Motion to Dismiss, [ECF No. 44], therefore, the Court will not analyze this claim as to those Defendants.

[13] The Court notes that this incident was not an impromptu traffic stop, but that Officer Defendants pursued Plaintiffs because Officer Duffy reported that he had observed drug activity. [Am. Compl. ¶ 265].

115, 122 (D. Mass. 2013)). Similarly, under Massachusetts law, officers must have "reasonable grounds" for making an arrest, a standard that "substantially overlap[s]" with the constitutional requirement of probable cause. Santiago v. Fenton, 891 F. 2d 373, 383 (1st Cir. 1989) (citations omitted). Therefore, the existence of probable cause will defeat a false arrest claim. Id.

The state law tort of false imprisonment is closely connected to constitutional wrongful arrest claims. Waterman v. City of Taunton, 742 F. Supp. 3d 144, 154 (D. Mass. 2024) (citing Finamore v. Miglionico, 15 F.4th 52, 61 (1st Cir. 2021)). It requires a plaintiff to show that: "(1) the defendant(s) intended to confine plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the defendant(s) had no privilege to cause the confinement." Cabot v. Lewis, 241 F. Supp. 3d 239, 259 (D. Mass. 2017) (quoting Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 n.6 (1st Cir. 1995)). Although probable cause is not an element of a false arrest claim, its existence provides officers with privilege and thereby defeats such a claim. Santiago, 891 F. 2d at 383 ("[A]t the foundation of all the claims [including common law false arrest and Section 1983] is the necessity that the arrest be supported by probable cause."); Waterman, 742 F. Supp. 3d at 155 ("False imprisonment claims against police officers, therefore, rise and fall with the constitutional wrongful arrest analysis, at least insofar as both require probable cause."). Where an arrest is made without a warrant, as in this case, defendants bear the burden of proving justification. Gutierrez v. Mass. Bay Transp. Auth., 772 N.E.2d 552, 564 (Mass. 2002).

Defendants do not argue that Plaintiffs, as alleged, fail to meet the elements of these constitutional and state law claims, but focus their arguments on the assertion that Plaintiffs are precluded from arguing that the stop of their vehicle was improper because Plaintiff Fofana

admitted to the finding of responsibility for the amended charge of failure to use care and caution on stopping. [ECF No. 43 at 11].

The Court is not persuaded that this admission suffices to support the doctrine of issue preclusion. Issue preclusion, or *collateral estoppel*, applies "when an issue of ultimate fact has . . . been determined by a valid and final judgment," and therefore, "that issue cannot again be litigated between the same parties in any future lawsuit." Bravo-Fernandez v. U.S., 580 U.S. 5, 7-8 (2016) (citing Ashe v. Swenson, 397 U.S. 436, 443 (1970)). When considering collateral estoppel claims that stem from earlier state court judgments, a federal court must look to the preclusion law of the applicable state. Johnson v. Mahoney, 424 F.3d 83, 93 (1st Cir. 2005).

It is well accepted by Massachusetts courts that an admission of responsibility, like a guilty plea, is not an adjudication on the merits. Aetna Cas. & Sur. Co, v. Niziolek, 481 N.E. 2d 1356, 1363 (Mass. 1985) (affirming the holding established in Morrissey v. Powell, 23 N.E. 2d 411 (Mass. 1939) that "a plea of guilt is admissible in evidence as an admission in subsequent civil litigation but is not conclusive");  Restatement (Second) of Judgments § 27(e) (1982) ("In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated"). In fact, even when a criminal defendant pleads guilty, the "doctrine of collateral estoppel does not apply to preclude the former criminal defendant from litigating in a subsequent civil litigation [,] issues involved in the criminal proceeding in which he pleaded guilty." Morrissey, 23 N.E. 2d at 413. Although an admission of facts material to a subsequent civil action may be admissible evidence against a party,

> such a plea, even when followed by a conviction, is not necessarily conclusive as to the facts admitted, and the record of a conviction based upon a plea of guilty is received "not as a judicial act, having the force and effect of a judgment," but as a solemn confession of the very matter charged in the civil action. The plea may be explained and reasons shown for entering it.

21

Id. (first citing Mead v. Boston, 3 Cush. 404, 407 (Mass. 1849), then Buxton v. Somerset Potters' Works, 121 Mass. 446, 448 (Mass. 1877); Minasian v. Aetna Life Ins. Co., 3 N.E.2d 17 (Mass. 1936) and cases cited)); see also Restatement (Second) of Judgments § 27(e) (1982).

Therefore, this Court does not view Plaintiff Fofana's previous admission of responsibility as precluding his Section 1983 claims, nor his state law claims, especially given the nature of the facts for this suit. Plaintiffs state that they did not violate any traffic laws when they were driving in their vehicle. [Am. Compl. ¶¶ 41-42]. Defendant Officers approached the stopped vehicle in plain clothes and mostly unmarked cars. [Id. ¶¶ 53-56]. Shortly into the interaction, Officer Tivnan shattered the window of Plaintiffs' vehicle and pulled them both from the vehicle with force with the aid of Officers Mitchell and Powers. [Id. ¶¶ 57-59]. Taking the facts in the light most favorable of the Plaintiffs, it is apparent that their vehicle was stopped at an intersection when they were approached by Defendant Officers, and Plaintiff Fofana's vehicle would not have hit the light pole but for his forced removal from the driver's seat.

As to the Section 1983 and state claims analysis, the tests are easily met. There is no contest that Defendants were acting under the color of law when they arrested the Plaintiffs, and it is a "long settled principle" that the Fourth Amendment prohibits warrantless arrests not supported by probable cause. Fraser, 544 F. Supp. 3d at 156-57. Probable cause was absent in this case, as determined by Judge D'Angelo at the motion to suppress hearing. [ECF No. 35-2]. Therefore, the Defendants did not act with privilege when detaining the Plaintiffs. Santiago, 891 F. 2d at 383.

These allegations, viewed in the light most favorable to Plaintiffs as required at this stage, are sufficient to state plausible claims of unlawful search and seizure under § 1983, and false arrest and imprisonment. The Court finds that Plaintiffs have "raise[d] a right to relief above the speculative level" on Counts I and VI and are therefore entitled to discovery against the Defendants

known to be at the scene and who subsequently filed reports of the arrest. Twombly, 550 U.S. at 555; Perez–Acevedo v. Rivero–Cubano, 520 F.3d 26, 29 (1st Cir. 2008); [see ECF No. 35-1].

Therefore, Defendants Duffy, Mitchell, Powers, Tivnan, Barney, Coleman, Frigon, and Panarello's Motion to Dismiss as to Count I is **DENIED**, Defendants Barney, Coleman, Frigon, and Panarello's Motion to Dismiss as to Count VI is **DENIED**.

### a.  Count II: Violation of Equal Protection (42 U.S.C. § 1983)

Plaintiffs bring a claim of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, asserting that the traffic stop and subsequent arrest were motivated by Plaintiffs' race. [Am. Compl. ¶¶ 260-70]; U.S. Const. Amend. XIV. Much of Plaintiffs' argument to support this cause of action derives from declarations in the amended complaint focusing on political policy issues, such as the 1970's implementation of the "War on Drugs" initiative, as well as instances of violent behavior of other officers who were not present during the January 30, 2020, arrest or related to this action. [Am. Compl. ¶¶ 1-6, 132-141, 201-239, 242-253]. Although some of these examples may be pertinent to the Plaintiffs' *Monell* liability claim, they are not enough to establish a racial discrimination claim in violation of the Equal Protection Clause against the individual officers.

In this Circuit, a viable claim of racial discrimination in violation of the Equal Protection Clause, in the absence of direct proof that racial animus caused the adverse action, requires "proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995)); Fincher v. Town of Brookline, 26 F.4th 479, 486

(1st Cir. 2022) (citing cases). A plaintiff pursuing an equal protection claim must demonstrate that a defendant was motivated, at least in part, by a discriminatory purpose, a showing of disproportionate impact alone is not enough to establish a constitutional violation. See Washington v. Davis, 426 U.S. 229, 237 (1976).

In the present case, Plaintiffs have not established sufficient discriminatory motive of the officers to pursue an equal protection claim. Although Plaintiffs make significant arguments about the War on Drugs and racial disparities in drug enforcement actions, the bar for disparate treatment under the Fourteenth Amendment is high, and even if the examples about disproportionate treatment by the WPD are accurate, Plaintiffs must still show there was discriminatory intent as to their case by these Officers. See McCleskey v. Kemp, 481 U.S. 279, 293 (1987). A presentation of disproportionate impact of the War on Drugs on people of color does not equate to a plausible equal protection claim. Id. The fact that the Plaintiffs are Black men, and that an Officer asked how Plaintiff Fofana was able to afford his jacket, are not enough to indicate discriminatory racial motive of the officers. [Am. Compl. ¶ 38, 68]. There is no indication in the complaint that Officer Duffy saw that the drivers of the Jetta were Black men when he called in the WPD Gang Unit and Vice Officers, only that the unidentified male who entered their vehicle and quickly left, was a Black man.[14] [Id. 32-37, 43]. In short, there are no facts alleging that the Plaintiffs' race was a determinative factor for the motor vehicle stop or the force used against them during the arrest.

Therefore, the Motion to Dismiss as to Defendant Officers Duffy, Tivnan, Powers, Mitchel, Barney, Coleman, Frigon, and Panarollo is **GRANTED**.

---

[14] Plaintiffs state that Officer Duffy did not call for the stop of the unknown Black male, he only called for the stop of the Jetta. [Am. Compl. ¶ 43].

b.  *Count IV: Civil Conspiracy (42 U.S.C. § 1983)*

Plaintiffs bring a Section 1983 claim of civil conspiracy, asserting that the Defendants acted conspiratorially under color of law to deprive Plaintiffs of their constitutionally protected rights under the Fourth, Fifth, and Fourteenth Amendments.[15] [Am. Compl. ¶¶ 284-287]. Defendants' argument is focused principally on the Count X Civil Conspiracy claim, described *infra* Section III.H.c, and does not address the alleged constitutional violations asserted by Plaintiffs in their complaint as to Count IV. [ECF No. 43 at 14-17].

Under Section 1983, a civil rights conspiracy involves "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Sánchez v. Foley, 972 F.3d 1, 11 (1st Cir. 2020) (quoting Est. of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008)). In addition to a conspiratorial agreement, the plaintiff must show "an actual abridgement of some federally secured right." Id. (quoting Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001)). This requirement reflects the fact that a "[c]onspiracy is merely the mechanism by which to obtain the necessary state action, or to impose liability on one defendant[.]" Id. (quoting Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980)). Conspiracies may be established through circumstantial evidence and are often a matter of inference. Id. at 12; Est. of Bennett, 548 F.3d at 178 ("[A] plaintiff need not present direct evidence of the agreement."). "[T]he agreement that

---

[15] The Court notes that Plaintiffs include the Fifth Amendment as a violation of their rights, without any facts or argument in support of a theory under the Fifth Amendment in either their amended complaint or their opposition. Accordingly, the Court will consider any Fifth Amendment based claims abandoned, as such claims are not properly briefed. "It is not the obligation of the Court to play the role of plaintiff's advocate, or to scour the record for evidence supporting a theory when plaintiff himself has neglected to do so. 'Judges are not like pigs, hunting for truffles buried in briefs.'" Bolduc v. Town of Webster, 629 F.Supp.2d 132, 138-39 (D. Mass. 2009) (citing United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

rests at the heart of a conspiracy is seldom susceptible of direct proof: more often than not such an agreement must be inferred from all the circumstances." Earle v. Benoit, 850 F.2d 836, 843 (1st Cir. 1988).

Plaintiffs' Section 1983 claim of civil conspiracy is anchored in their arguments for unreasonable search and seizure (Count I) and equal protection (Count II). The Court has already determined that Count I may move forward to discovery and has precluded Count II. As detailed above in this Court's discussion regarding Count I, Plaintiffs have alleged sufficient information to show that the Officers acted in concert to violate Plaintiffs' right to remain free from unreasonable search and seizure. The Defendants acted together, within minutes, to surround the Plaintiffs' car without probable cause and detained the Plaintiffs by force. The use of force by police in stopping and apprehending the Plaintiffs was excessive given the fact that the initial call by Officer Duffy was on the suspicion of a small drug transaction. It is plausible that Defendant Officers planned this approach as a group. Additionally, although filing a false police report is not a civil cause of action in itself, [see infra III.H.b], the Plaintiffs have alleged enough facts indicating that the Defendant Officers were jointly involved in drafting the police reports to justify the use of force related to Plaintiffs' Fourth Amendment claim. Under these facts, it is reasonable to infer that the Defendants were acting pursuant to an agreement.

Therefore, the Motions to Dismiss as to Defendant Officers Duffy, Mitchell, Powers, Tivnan, Barney, Coleman, Frigon, and Panarello are **DENIED.**

### G.    **State Claims Against Officer Defendants in their Individual Capacities**

#### a.   *Count V: Assault and Battery; Count VII: Unreasonable Force*

Plaintiffs bring a claim of assault and battery against Defendant Officers Duffy, Tivnan, Powers, Barney, Frigon, Coleman and Panarello, arguing that the Defendants placed Plaintiffs in

"immediate fear of death and severe bodily harm" during their arrest. [Am. Compl. ¶ 290]. Defendants Duffy, Mitchell, Powers, and Tivnan do not oppose Count V in their Motion to Dismiss, [ECF No. 44], therefore, the Court will not analyze this claim related to those Defendants. Defendants Hanlon, Barney, Coleman, Frigon, and Panarello merely assert that, as pleaded, the assault and battery claim is duplicative of Count VII for unreasonable force. [ECF No. 43 at 17-18].

A plaintiff may bring a Section 1983 claim for excessive force founded on the Fourth Amendment right to be free from unreasonable seizures of the person. Raiche v. Pietroski, 623 F. 3d 30, 36 (1st Cir. 2010). An officer may be held liable for assault and battery where the officer used unreasonable force during an arrest. Id. For Plaintiffs to succeed on an assault and battery claim against an officer, the officer must have used unreasonable force, such that "the same standards apply to both state law assault and battery and Section 1983 claims" of excessive force. See Nelson v. City of Davis, 709 F.Supp. 2d 978, 992 (E.D. Cal. 2010). Normally, when a common law claim of intentional assault and battery is brought in combination with Section 1983 excessive force claim, the claims rise and fall together. Raiche, 623 F. 3d at 40. While both counts allege that Defendants acted under color of law at all material times, [Am. Compl. ¶ 289], there is no reference to Section 1983 or a Fourth Amendment foundation for these claims. Therefore, the Court must analyze these claims under the applicable state laws.

Under Massachusetts law, the intentional tort of civil assault is defined as "an act done with the intention of causing 'a harmful or offensive contact with the person of the other . . ., or an imminent apprehension of such a contact [if] . . . the other is thereby put in such imminent apprehension.'" Guzman v. Pring-Wilson, 963 N.E.2d 1196, 1199 (Mass. App. Ct. 2012) (alterations in original) (quoting Restatement (Second) of Torts § 21(1)). A defendant is liable for

the intentional tort of battery if "'he acts intending to cause a harmful or offensive contact with the person of the other . . . and a harmful contact with the person of the other . . . results[.]'" Waters v. Blackshear, 591 N.E.2d 184, 185 (Mass. 1992) (quoting Restatement (Second) of Torts § 13).

Plaintiffs allege that when they stopped their vehicle to turn, plain-dressed officers in unmarked vehicles surrounded their Jetta and officers approached the vehicle yelling to "get out of the "f*cking car." [Am. Compl. ¶¶ 53-56]. Plaintiffs assert that they believed that the vehicles intended to drive them off the road and that they were placed in imminent fear of physical harm. [Id. ¶ 52]. Plaintiffs also assert that Defendants broke the window of their vehicle and forcefully removed both Plaintiffs, by pulling on their head, neck, and clothing, before forcing the Plaintiffs onto the ground. [Id. ¶¶ 58-60]. The Officers then began hitting and kicking the Plaintiffs while they lay on the ground. [Id. ¶ 61]. These facts are sufficient for the Plaintiffs to assert an assault and battery claim. Although the pleading is scarce relating to the individual actions of each Defendant named in this amended complaint, there is enough evidence presented that Defendant Officers Barney, Coleman, Frigon, and Panarello were present at the scene and filed police reports regarding their conduct in the arrest. [ECF No. 35-1 at 2]. Reading the amended complaint holistically includes relevant attachments, and that information is enough to satisfy this Court at the motion to dismiss stage.

Therefore, the Motion to Dismiss, [ECF No. 42], is **DENIED** as to Count V for Defendant Officers Barney, Coleman, Frigon, and Panarello.

Plaintiffs fail to adequately plead or argue Count VII: Unreasonable Force under Section 1983. As written, the excessive force claim is essentially the same as an assault and battery intentional tort claim, and is therefore, duplicative of the assault and battery claim brought against

Defendants. Thus, the Court **GRANTS** the Motion to Dismiss, as to Count VII. This count is dismissed without prejudice.

### H.   State Claims Failing under 12(b)(6) Due to Insufficient Pleading

#### a.   *Count IX (unreasonable search and seizure)*

Plaintiffs bring a separate civil claim of unreasonable search and seizure; however, the source of law is unclear. Defendants argue that this claim is insufficiently pleaded and duplicative of Count I; the Court agrees.

Plaintiffs do not assert whether this claim is brought under the Massachusetts Declaration of Rights,[16] or the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §11I. Mass. Gen. Laws Ch. 12, §11I is the state analog to Section 1983. The MCRA creates a private right of action in which individuals may recover for constitutional violations regardless of whether they acted under the color of law. See Sena v. Commonwealth, 629 N.E.2d 986, 993 n.9 (Mass. 1994). To state a viable MCRA claim, a plaintiff must demonstrate that "(1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion." Barron v. Kolenda, 203 N.E.3d 1125, 1139-40 (Mass. 2023) (quoting Glovsky v. Roche Bros. Supermarkets, Inc., 17 N.E.3d 1026, 1035 (Mass. 2014)). There are no elements of the MCRA outlined in the pleading of this claim in the amended complaint, nor does Plaintiffs' opposition clarify the source of law for this count.

---

[16] Article 14 of the Massachusetts Declaration of Rights ("MDR") provides, among other things, "a right to be secure from all unreasonable . . . seizures." Mass. Const. pt. 1, art. XIV. Although assertions of Article 14 of the MDR are common in civil rights cases, Massachusetts courts have not certified that there is a private right of action to enforce the Declaration of Rights. Pimentel v. City of Methuen, 323 F. Supp. 3d 255, 273 (D. Mass. 2018) (citing Phillips v. Youth Dev. Program, Inc., 459 N.E.2d 453, 457 (Mass. 1983); Layne v. Superintendent, Mass. Corr. Inst., Cedar Junction, 546 N.E.2d 166, 169 (Mass. 1989)). To the extent that Plaintiff is asserting a claim under the MDR, the motion to dismiss must be granted.

Accordingly, the Court views this claim as insufficiently pleaded to state a claim and duplicative of Count I. See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 (1st Cir. 2013) (finding that where "[p]leading an additional cause of action provides [the plaintiff] with no further remedy. . . [the count] is therefore subject to dismissal as a duplicative claim."); see also Ferran v. Town of Nassau, 11 F.3d 21, 23 (2nd Cir. 1993) (holding that dismissal is proper when a subsequent § 1985 claim "merely duplicates part of their claim under §1983").

The Court, therefore, **GRANTS** the motion to dismiss as to Count IX. This claim is dismissed without prejudice.

### b. *Count XI: filing of false police reports*

Count XI alleges a claim against all Defendants for filing false police reports. The legal basis for this claim is unclear.

The amended complaint alleges that all defendants "upon realizing their mistake . . . conspired to falsify official reports" to justify their use of force during the arrest. [Am. Compl. ¶¶ 307-08]. Defendants argue both in their briefing and at oral argument that this is not a civil cause of action, citing a lower state court decision, Mirsky v. Barkas, 28 Mass. L. Rep. 384, 2011 Mass. Super. WL 2371879, *5 (Jan. 31, 2011), and Mass. Gen. Law ch. 268, § 6A for support. [17] [ECF No. 43 at 20]. Plaintiffs do not oppose the Defendants' argument in their opposition briefing, nor did they address the issue during the hearing. [18] [ECF Nos. 52, 61].

---

[17]"The court has been unable to find any Massachusetts case supporting a civil claim based on filing a false police report, and [Plaintiff] has not cited to any such case. General Laws c. 268, § 6A criminalizes false police reports, but this statute does not provide for a civil cause of action. A claim of misrepresentation could, perhaps, be based on the filing of a false police report. Here, however, there is no allegation that [Defendant Officer] filed the three allegedly false police reports in order to induce [Plaintiff] to act or refrain from acting. See Masingill v. EMC Corp., 449 Mass. 532, 540 (2007) (holding inducement is required element of misrepresentation claim);Mirsky v. Barkas, No. 2010-0624, 2011 WL 2371879, at *5 (Mass. Super. Jan. 31, 2011).

[18] As stated *supra* Section III.B., the Court may therefore determine that Plaintiffs waive their arguments as to this count. See Sigma-Aldrich Corp., No. 23-cv-10140-DJC, 2025 WL 1927623, at *

Other courts in this district have construed similar filings as a claim under Section 1983. Landrigan v. City of Warwick, 628 F.2d 736, 745 (1st Cir. 1980); Fraser v. Mass. Bay Transp. Auth., 544 F. Supp. 3d 148, 161 (D. Mass. 2021). A Section 1983 claim may exist concerning a false police report when "action is subsequently taken on the basis of the report." Landrigan, 628 F. 2d at 744. The Court's analysis must be focused, "on the consequences, if any, not on the mere existence of the report." Id. at 745. The First Circuit was explicit in finding that, "the mere filing of the false police reports, by themselves and without more, [does] not create a right of action in damages under 42 U.S.C. § 1983." Id. As noted, to establish a Section 1983 claim a plaintiff must show that defendants acted under the color of state law, and that his or her conduct deprived plaintiff of rights secured by the Constitution or by federal law. Gagliardi, 513 F.3d at 306 (citing Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997)).

Here, the amended complaint does not allege that Plaintiffs were deprived of any federally secured right – such as unlawful seizure in violation of the Fourth and Fourteenth Amendments – *because of* the alleged inaccuracies in the police report. According to the amended complaint, Plaintiffs were arrested before any of the reports were drafted by Defendant Officers. [Am. Compl. ¶ 77 ("Each of the named defendants filed false reports in an attempt to justify the arrest and use of force upon Mr. Fofana and Mr. Paniagua")]. Thus, even accepting Plaintiffs' argument that the Officers intentionally misrepresented their interactions with Plaintiffs to justify the force used in the arrest, those falsities did not result in an unlawful seizure or imprisonment of Plaintiffs or otherwise violate their federal rights. Furthermore, after the Plaintiffs' motion to suppress was granted by Judge D'Angelo, all criminal charges against the Plaintiffs were dropped. [Id. ¶ 76].

(citing Uranga, 490 F. Supp. 3d at 109; Mahoney, 342 F. Supp. 3d at 217; Perkins, 969 F.Supp.2d at 177); Mass. R. Civ. P. 7.1(b)(2).

The continued existence of falsely filed police reports, by itself, does not create a cause of action under Section 1983. See Landrigan, 628 F.2d at 745.

Accordingly, Count XI must be dismissed against all Defendants. Defendants' Motions to Dismiss are **GRANTED** pursuant to this claim. [ECF Nos. 40, 42, and 44].

    *c.   Count IX: Civil Conspiracy*

Count IX for civil conspiracy, appears to be pleaded under a different theory than the Section 1983 claim in Count IV. Unlike the Section 1983 claim, which asserts that Defendants acted in concert to violate constitutional rights under the Fourth Amendment, Count IX, in contrast, is based on the underlying cause of action for falsifying police reports and the assertion that the Defendant Officers conspired to file reports with false information to justify their use of force during the arrest.

Massachusetts law recognizes two types of civil conspiracy: the first is true conspiracy, "based on coconspirators exerting some peculiar power of coercion," and the second is concerted action conspiracy, a "form of vicarious liability for the tortious conduct of others . . . requir[ing] an underlying tort." Greene v. Philip Morris USA Inc., 208 N.E.3d 676, 682 (Mass. 2023) (citation modified); Taylor v. Am. Chemistry Council, 576 F.3d 16, 34-35 (1st Cir. 2009). To advance a true conspiracy claim, Plaintiff must allege and prove "that by 'mere force of numbers acting in unison' the defendants exercised 'some peculiar power of coercion of the plaintiff which any individual standing in a like relation to the plaintiff would not have had.'" Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc., 62 F. Supp. 2d 236, 244 (D. Mass. 1999) (quoting Fleming v. Dane, 22 N.E.2d 609, 611 (Mass. 1939)). The second theory, concerted action conspiracy, "applies to a common plan to commit a tortious act where the participants know of the plan and

its purpose and take affirmative steps to encourage the achievement of the result." <u>Greene</u>, 208 N.E.3d at 683 (quoting <u>Kurker v. Hill</u>, 689 N.E.2d 833, 871 (Mass. App. Ct. 1998)).

Here, there is no allegation that the Defendants possessed any collective power of coercion beyond what each possessed individually as police officers in regard to the filing of false police reports. Additionally, as determined in Section III.H.b, there is no civil cause of action for filing a police report. Therefore as pleaded, Count XI fails to state a claim for relief under both theories of civil conspiracy.

Therefore, the Motions to Dismiss as to Count IX, are **GRANTED.**

## IV.    **CONCLUSION**

For the reasons stated above, the Defendant City's Motion to Dismiss is **GRANTED**, [ECF No. 40], and Defendants' Motions to Dismiss [ECF Nos. 42 and 44] are **GRANTED IN PART** and **DENIED IN PART** in accordance with the Court's previous order, [ECF No. 62]. All official-capacity claims seeking monetary damages against the remaining Defendants are hereby **DISMISSED** for lack of subject matter jurisdiction under Eleventh Amendment Sovereign Immunity and for failure to state a claim under 42 U.S.C. § 1983.


**SO ORDERED.**

Dated: January 27, 2026

  /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge